558 So.2d 144 (1990)
Mel KAHLER and Suzanne Adkison, Appellants,
v.
E.F. HUTTON & CO., INC., N/K/a Shearson Lehman Hutton, Inc., Appellee.
No. 89-137.
District Court of Appeal of Florida, Third District.
March 13, 1990.
Gilbride, Heller & Brown and Dyanne E. Feinberg, Miami, for appellants.
Ruden, Barnett, McClosky, Smith, Schuster & Russell and Birgitta K. Siegel, Miami, for appellee.
Before HUBBART, BASKIN and FERGUSON, JJ.
PER CURIAM.
Kahler and Adkison appeal an order dismissing their multi-count complaint against *145 Dean Witter Reynolds, Inc. and Shearson Lehman Hutton Inc.
Appellants were solicited by a fruit juice company, Caribbean Select, Inc. (CSEL), to purchase stock. Hicks and Gagne, Officers of CSEL, allegedly made false representations to Adkison and Kahler concerning the company's anticipated earnings and expanding market. Hicks provided Kahler with the names of brokers to contact to obtain more information about CSEL stock. The company also sent mass mailings of post cards to prospective purchasers, listing the names of several brokers. Kahler alleges that before he bought any stock, he telephoned one of the brokers suggested by CSEL, Reynolds, who was then employed at E.F. Hutton (now Shearson). Reynolds then embarked on a hard-sell campaign to induce the plaintiffs to purchase CSEL stock and warrants, allegedly making false representations concerning the purchase of CSEL stock by brokers in his firm and CSEL's anticipated profits. The broker allegedly indicated that he had personally investigated Hicks and Gagne's claims and found them accurate. Kahler and Adkinson purchased CSEL stock. The stock, however, was not purchased from Reynolds or E.F. Hutton; the appellants purchased the stock through their existing accounts at Charles Schwab. After the price of the stock declined, appellants contacted Reynolds who was then with Dean Witter. When questioned about the health of the stock, Reynolds stated that the low price of the stock was due to market conditions and that he was recommending the stock to Dean Witter clients as he expected the price to increase. At no time did the appellants open an account at either Shearson or Dean Witter. As the price of shares continued to decline, Kahler and Adkison sold their CSEL purchases, losing $100,000 in the transaction. Appellants filed a suit against eight defendants alleging, among other things, common-law fraud.
The facts in the amended complaint alleged that Hicks and Gagne, orally, and through their mass mailings, made false representations with the intent to induce appellants to purchase stock and that appellants relied on those representations to their detriment. The complaint further alleged that the additional representations made by Reynolds were part of a scheme by Shearson and Dean Witter to "make a market" in the stock of CSEL calculated to drive up the price of the stock in order to unload the stock from the brokerage firms' own inventory. The trial court dismissed the counts against Shearson and Dean Witter for common-law fraud, negligent supervision, RICO violations, and punitive damages. We affirm.
Taking all of the allegations in the amended complaint as true, appellants have failed to state any common-law claim for fraud which is independent of a cause of action under § 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78a et seq. The appellants' claim, that the brokerage firms engaged in a scheme to defraud the public by creating an artificial market, mimics a fraud-on-the-market claim. Jurisdiction for such actions lies exclusively in the United States District Courts. See Basic Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (identifying elements of a fraud-on-the-market action); Keyser v. Commonwealth Nat'l Fin. Corp., 121 F.R.D. 642, 649 (M.D.Pa. 1988) (fraud-on-the-market claim unavailable in common law); 15 U.S.C. § 78aa.
As to the count for negligent supervision, the complaint alleges that appellants purchased the stock in reliance on the representations made by CSEL officers, Hicks and Gagne. Thus, any alleged failure by the brokerage firms to supervise Reynolds was not the proximate cause of the appellants' loss. Stahl v. Metropolitan Dade County, 438 So.2d 14 (Fla. 3d DCA 1983).
The remaining claims are without merit.
Affirmed.