### In re CHECKERS SECURITIES LITIGATION.

#### No. 93–1749–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

July 5, 1994.

Atlee W. Wampler, III, Wampler, Buchanan & Breen, P.A., Miami, FL, Rachel Sirota, Sirota & Sirota, New York City, for Colby Collier.

Atlee W. Wampler, III, Wampler, Buchanan & Breen, P.A., Miami, FL, Richard S. Schiffrin, Schiffrin & Craig, Bala Cynwyd, PA, for Smith Barney.

Atlee W. Wampler, III, Wampler, Buchanan & Breen, P.A., Miami, FL, Curtis V. Trinko, Law Offices of Curtis V. Trinko, New York City, for Charles J. and Janet P. Dick.

Atlee W. Wampler, III, Wampler, Buchanan & Breen, P.A., Miami, FL, Lawrence A. Sucharow, Goodkind, Labaton, Rudoff & Sucharow, New York City, for Sandy R. Levy.

Atlee W. Wampler, III, Wampler, Buchanan & Breen, P.A., Miami, FL, Robert A. Skirnick, Daniella Quitt, Wechsler, Skirnick, Harwood, Feffer & Halebian, New York City, for Stephen Richek.

Richard M. Kirby, Jones, Day, Reavis & Pogue, Atlanta, GA, Charles P. Campbell, Jr., Shumaker, Loop & Kendrick, Tampa, FL, for Checkers Drive–In Restaurants, Inc., Herbert G. Brown, James E. Mattei, Paul C.

Campbell, George W. Cook, Jared D. Brown, Harry S. Cline, James M. Roche, N. John Simmons, Jr., James F. White, Jr.

Phillip S. Dingle, Hill, Ward & Henderson, P.A., Tampa, FL, Sidney Davis, Davis, Scott Weber & Edwards, P.C., New York City, for KPMG Peat Marwick.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant Checkers Drive–In Restaurants' and the Individual Defendants' Dispositive Motion to Dismiss, and on Defendant KPMG Peat Marwick's Dispositive Motion to Dismiss (Dkts. # 13 and 16). This Court has reviewed Defendant Checkers Drive–In Restaurants, Inc.'s and the Individual Defendants' Brief in Support of Dispositive Motion to Dismiss (Dkt. # 14), Defendant KPMG Marwick's Memorandum of Law in Support of Dispositive Motion to Dismiss (Dkt. # 17), Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Dkt. # 24), Checkers Defendants' Reply Memorandum in Further Support of their Dispositive Motion to Dismiss (Dkt. # 30), Defendant KPMG Peat Marwick's Reply Memorandum in Further Support of its Dispositive Motion to Dismiss (Dkt. # 31), and Plaintiffs' Memorandum in Further Opposition to Defendants' Motion to Dismiss (Dkt. # 32, Exhibit A).

## PARTIES

The Plaintiffs in this action are Colby L. Collier, Smith Barney as custodian for John Mattia, IRA, Charles J. and Janet P. Dick, Sandy R. Levy, Stephen Richek and all other Plaintiffs within the Class period if the class is certified. Defendant Checkers is a Delaware Corporation with its principal executive offices in Clearwater, Florida. It develops, produces, owns, operates, and franchises quick service hamburger restaurants designed with a distinctive theme and a double drive-through concept.

Individual Defendants are Herbert G. Brown, Director and Chairman of the Board; James E. Mattei, Co-founder, Director, Chief Executive Officer, and President; Paul C. Campbell, Vice President and Chief Financial Officer from April 1990 until 1991; George W. Cook, Director and Executive Vice President of Purchasing, Human Resources, Security, and Training, and President of Champion Modular Restaurant Company, Inc. (consolidated wholly owned subsidiary of Checkers); Jared D. Brown, Director, Vice President of Franchising, Marketing, and Advertising, and Secretary–Treasurer; Harry S. Cline, Director and member of the Audit Committee (his law firm rendered legal services to Checkers); James M. Roche, Director and member of the Audit Committee; John Simmons, Jr., Vice President of Finance and Chief Financial Officer since 1992 (prior partner of Checkers' auditors); James F. White, Jr., Chief Operating Officer and Director (his law firm acted as legal counsel to Checkers). Defendant Peat Marwick is a certified public accounting firm, and audited and reported upon Checkers' financial statements that were filed with the SEC and disseminated to the investing public, beginning with fiscal year 1989 and continuing during the Class period.

## BACKGROUND

This is a class action consisting of Plaintiffs who purchased, converted, exchanged, or otherwise acquired shares of common stock of Checkers during the Class period. Plaintiffs allege during the period of November 22, 1991 through October 8, 1993 Checkers, officers and/or directors of Checkers, and KPMG Peat Marwick "acted in concert" to falsify Checker's financial statements by systematically overstating revenue and understating expenses. Plaintiffs contend that Checkers issued materially false and misleading financial statements that artificially inflated the market price of its common stock.

Plaintiffs further argue that Peat Marwick was at no time an independent auditor. Plaintiffs contend Defendant Simmons, a Peat Marwick partner, was rewarded by Checkers with appointment to the position of Vice President and Chief Financial Officer soon after the Initial Public Offering. Additionally, Plaintiffs allege Peat Marwick was rewarded with additional work and the secu-

rity of knowing that its future retention, as auditors, was assured.

Plaintiffs allege that revenue was falsely and materially overstated through the improper recognition of revenue, using the percentage-of-completion method of accounting during the short-term construction of modular restaurant units by Champion; and through the improper recognition of revenue on purported "sales" of franchises and modular restaurant units when, in fact, such "sales" were temporary transfers of ownership, primarily to related parties who later "resold" such franchises and modular restaurant units to Checkers. Plaintiffs allege that expenses were falsely and materially understated through the failure to provide for warranty costs, payroll taxes for employees improperly stated as independent contractors, payroll-related costs, and interest and penalties on delinquent payroll taxes.

Plaintiffs argue that by reason of their positions as directors and/or executive officers of Checkers, each of the Individual Defendants possessed intimate knowledge of, participated in, or approved and ratified the deceptive and manipulative acts, practices and transactions, and the material omissions and false and misleading statements contained in the reports and financial statements of the Company and in press releases and other reports of the Company.

Additionally, Plaintiffs contend such constituted a course of conduct designed to defraud and deceive the public and to perpetrate a fraud on the market for Checkers' securities. Plaintiffs allege Individual Defendants concealed the adverse facts concerning Checkers' revenues and expenses so that they could (1) protect their executive/directorship positions and substantial compensation or prestige; (2) enhance the value of their personal Checkers' securities holdings and options; (3) inflate the apparent profits in order to support the market for various securities offerings; and (4) conceal and cover up their own misconduct and mismanagement.

The Consolidated Complaint alleges six causes of action against Checkers, the Individual Defendants, and Peat Marwick: (1) alleges violation of Sections 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder against all Defendants; (2) alleges violation of Section 20(a) of the Exchange Act against the Individual Defendants; (3) alleges against Peat Marwick for Aiding and Abetting; (4) alleges Common Law Fraud and Deceit against all Defendants; (5) alleges Negligent Misrepresentation against all Defendants; (6) alleges violation under Sections 517.211 and 517.301 of the Florida Securities Investor Protection Act ("FSIPA") against all Defendants.

■■■ Ruling on a motion to dismiss before turning to motion for class certification is proper. *Morse v. Weingarten*, 777 F.Supp. 312, 314 (S.D.N.Y.1991). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### 1. ALLEGATIONS PURSUANT TO SECTIONS 10(b) OF THE EXCHANGE ACT AND RULE 10b–5

■■■ Pleading fraud with greater specificity than is normally required by the Federal Rules is necessary in order to (1) provide Defendants with sufficient notice of the acts of which the Plaintiff complains to enable them to frame a response, (2) prevent fishing expeditions to uncover unknown wrongs and (3) protect Defendants from unfounded accusations of immoral and otherwise wrongful conduct. *Knight v. E.F. Hutton and Co., Inc.*, 750 F.Supp. 1109, 1114 (M.D.Fla.1990).

■■■ While mere conclusory allegations of fraud will not satisfy Rule 9(b), allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient. *First Union Brokerage v. Milos*, 717 F.Supp. 1519, 1522 (S.D.Fla.1989). A strict application of Rule 9(b) in class action securities fraud cases could result in substantial unfairness to persons who are the victims of fraudulent

conduct. *In re United States Oil and Gas Litig.*, 1988 WL 28544 at 1 (S.D.Fla.1988).

 Only purchasers and sellers of securities may maintain an action under Rule 10b–5. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975). A cause of action under Section 10(b) or Rule 10b–5 requires that the Plaintiff prove (1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the Plaintiff relied (5) that proximately caused the Plaintiffs' loss. *Gouchnauer v. A.G. Edwards & Sons., Inc.,* 810 F.2d 1042, 1046 (11th Cir.1987). Allegations of date, time, or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity. *Durham v. Business Associates,* 847 F.2d 1505, 1512 (11th Cir.1988).

### A. MISSTATEMENT OR OMISSION

 Plaintiffs allege that the revenue in SEC filings, financial statements, press releases and public statements relating to Checkers' financial condition was falsely and materially overstated using the percentage-of-completion method of accounting and by recognizing revenue on purported "sales" of franchises and modular restaurant units. Plaintiffs further allege that expenses were falsely and materially understated through the failure to provide for warranty costs, payroll taxes for employees improperly stated as independent contractors, and interest and penalties on delinquent payroll taxes. Such facts sufficiently allege a misstatement and/or omission.

### B. SCIENTER

 Scienter may be established by proof of misconduct which is knowing or extremely reckless in that it reflects an extreme departure from the standards of ordinary care. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 545 (5th Cir.1981). Plaintiffs sufficiently plead that Checkers and the Individual Defendants, and KPMG Peat Marwick knowingly or recklessly violated Section 10(b) in that they employed a scheme to overstate revenues and understates expenses so that Checkers' stock price was artificially inflated.

### C. PRESUMPTION OF RELIANCE AND MATERIALITY

 Defendants argue Plaintiffs did not allege actual reliance. Reliance is an essential element of a Rule 10b–5 action as it "establishes the causal link between the Defendant's activities and the Plaintiff's injuries and prevents federal securities law from affording unlimited liability." *Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir. 1989). Because reliance is so difficult to prove when a Defendant has failed to disclose a material fact rather than misrepresenting it, the trier of fact may presume reliance in an omission case where the Plaintiffs could justifiably expect that the Defendants would disclose material information. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

 If the court determines that the case is one of misrepresentation, then the more stringent reliance requirement would apply. *Rifkin v. Crow,* 574 F.2d 256, 263 (5th Cir.1978). If the court determines that the case is one of omission, then plaintiff is entitled to the *Ute* presumption of reliance. *Id.* However, when the Rule 10b–5 shifts from misrepresentation or omission in a document to fraud on a broader scale, the search for causation must shift. *Shores v. Sklar,* 647 F.2d 462, 467 (5th Cir.1981). A Plaintiff need not show actual reliance on a misleading document where the allegation is "one of a scheme to inflate common stock prices by misleading statements." *Id.*

 Where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual Plaintiffs on the integrity of the market price may be presumed. *Basic Inc. v. Levinson,* 485 U.S. 224, 247, 108 S.Ct. 978, 991–92, 99 L.Ed.2d 194 (1988). That presumption is rebuttable. *Id.* at 248, 249, 108 S.Ct. at 992, 993. It is reasonable to assume that misinformation disseminated into the marketplace will affect the market price. *Lipton v. Documation, Inc.,* 734 F.2d 740, 745 (11th Cir.1984). It is also reasonable to allow a Plaintiff to allege

that he relied on the integrity of the market prices in purchasing the securities and then shift the burden to the Defendant to disprove actual reliance. *Id.* at 746.

■ Where the Plaintiff class alleges that deception resulted in inflated security prices on the open market, the burden of proof shifts to the Defendant to show either that the deception was immaterial, that an insufficient number of traders relied on the misleading information to inflate the price, or that the Plaintiff purchased the securities knowing of the misrepresentations or would have still purchased the securities despite the misrepresentation. *Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975).

■ The main inquiry under the fraud on the market theory is whether the stock price, at the time a Plaintiff effected a trade, reflected the misinformation alleged to have been disseminated. *In re Sahlen & Associates, Inc. Securities Lit.,* 773 F.Supp. 342, 357 (S.D.Fla.1991). Plaintiffs seeking to invoke the fraud on the market theory must allege either that the stock they purchased or sold was actively traded on a well-developed, efficient market or facts which give rise to such an inference. *Id.* at 356.

As to Checkers and the Individual Defendants, Plaintiff alleges sufficient circumstances to plead fraud with particularity to put Defendants on notice of the acts of which the Plaintiff complains to enable Defendants to frame a response. Plaintiffs allege Checkers common stock had been actively traded during the Class Period on the NASDAQ over-the-counter National Market System, an efficient market (page 8, # 11a). Plaintiffs sufficiently plead fraud on the market by alleging Defendants devised a scheme using misleading statements to inflate common stock prices which induced Plaintiffs' reliance on the integrity of the market. Therefore, Defendants have the burden of proof to show either that the deception was immaterial, that an insufficient number of traders relied on the misleading information to inflate the price, or that Plaintiffs purchased the securities knowing of the misrepresentations, or would have still purchased the securities despite the misrepresentation.

## D. CAUSATION

■ A Plaintiff must prove both actual causation (transaction causation) and proximate causation (loss causation) in order to prevail on a section 10(b) claim. *Bruschi v. Brown,* 876 F.2d 1526, 1530 (11th Cir.1989). Transaction causation is demonstrated by proof that the Defendant's misrepresentations induced the Plaintiff to make the investment. *Id.* Loss causation requires the Plaintiff to prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss. *Id.*

■ A Plaintiff need not show that the Defendant's conduct was the sole and exclusive cause of his injury, but merely must establish that it was a substantial factor. *Bruschi* at 1531. Although Defendants may attempt to show that the stock price plunged due to general market conditions or for some other reason unrelated to their allegedly wrongful conduct, Plaintiff's allegations are more than sufficient to connect the fraudulent scheme to the decline in the value of their stock for purposes of a motion to dismiss. *In re Sahlen & Assoc., Inc. Secur. Lit.,* 773 F.Supp. 342, 360 (S.D.Fla.1991).

Transaction causation has been sufficiently plead where Plaintiffs allege Defendants' misrepresentations induced a Plaintiff to make the investment (page 47, # 89). Loss causation has been sufficiently plead where Plaintiffs allege that had they known the truth, they would not have invested and alleged that the untruth was in some reasonably direct, or proximate, way responsible for their loss. It can be inferred from Plaintiffs' allegations about Defendants' self-dealing that Defendants' conduct was a substantial factor and Plaintiffs need not allege it was the sole and exclusive cause of their loss. Defendants attempt to show that the stock price plunged due to general market conditions; however, Plaintiff's allegations are sufficient to connect the fraudulent scheme to the decline in the value of stock for purposes of a motion to dismiss.

### E. PLEADING BASED ON INFORMATION AND BELIEF

Allegations of fraud based on information and belief do not usually satisfy the degree of particularity required under Rule 9(b). *Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D.Cal.1982). However, an exception exists where the Plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing. *Id.* In such cases, a complaint based on information and belief is sufficient if it includes a statement of the facts upon which the belief is based. *Id.*

Defendants argue that allegations of information and belief do not satisfy the degree of particularity required under Rule 9(b). However, because Defendants are in the best position to know what facts, if any, constitute wrongdoing and Plaintiffs allege sufficient facts as a basis for their belief, the Complaint satisfies Rule 9(b) particularity.

Thus, Checkers' and Individual Defendant's Dispositive Motion to Dismiss is denied as to the 10(b)-5 claim because Plaintiffs sufficiently plead a misstatement and/or omission of a material fact made with scienter upon which the Plaintiff relied that proximately caused the Plaintiffs' loss.

As to KPMG Peat Marwick, Plaintiffs allege that the accounting firm is a primary violator (page 8, # 9). Plaintiffs allege that the Individual Defendants and Peat Marwick acted in concert (page 13, # 20) and that they either knew or were reckless (page 47, # 90, 91). Therefore, since Plaintiffs have pled fraud with particularity, KPMG Peat Marwick's Dispositive Motion to Dismiss is denied as to the 10(b)-5 claim.

### 2. ALLEGATIONS PURSUANT TO SECTION 20(a) OF THE EXCHANGE ACT

Plaintiff alleges that the Individual Defendants are secondarily liable as controlling persons. Defendants argue Section 20(a) claims are defective because Plaintiffs fail to allege violation of Rule 10b-5, and fail to allege any facts demonstrating culpable conduct on the part of any Individual Defendant. Since this Court has concluded that Plaintiffs allege a violation of Rule 10b-5, the issue is whether Plaintiffs allege facts demonstrating culpable conduct on the part of the Individual Defendants.

While the general rule is that where multiple Defendants are involved, the complaint must distinguish among them and specify their respective roles, no specific connection between the fraudulent representations and particular Defendants is necessary in cases of corporate fraud brought against insiders and affiliates where the false information is disseminated in group-published documents. *In re Sahlen & Associates, Inc. Securities Lit.*, 773 F.Supp. 342, 362 (S.D.Fla.1991). As long as the complaint describes the Defendants with sufficient information to respond, a court may presume that these acts have been committed collectively by the officers and directors. *Id.* This relaxed standard for Rule 9(b) purposes has arisen because of the recognition that it may be exceedingly difficult to attribute particular fraudulent conduct to each individual Defendant. *Id.*

Plaintiffs allege by reason of Individual Defendants' positions as directors and/or executive officers of Checkers, each possessed intimate knowledge of, participated in, or approved and ratified the deceptive and manipulative acts, practices and transactions, and the material omissions and false and misleading statements. Plaintiffs allege further that Individual Defendants conduct constituted self dealing. Plaintiffs contend the Individual Defendants were protecting their salaries, enhancing their stock values, inflating profits to support a market for their securities, and covering up their misconduct and mismanagement. Plaintiffs' Section 20(a) claim is sufficient for purposes of Rule 9(b).

### 3. AIDING AND ABETTING

Aiding and abetting is established by showing that (1) another party violated the securities laws, (2) the accused is generally aware of his role in the improper activity, and (3) the accused aider and abettor knowingly rendered substantial assis-

tance. *Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1045 (11th Cir.1986), *cert denied,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). Whether the assistance was "substantial" depends on the totality of the circumstances. *Woods v. Barnett Bank,* 765 F.2d 1004, 1010 (11th Cir.1985).

 Because the text of section 10(b) does not prohibit aiding and abetting, a private Plaintiff may not maintain an aiding and abetting liability suit under section 10(b). *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* — U.S. —, —, 114 S.Ct. 1439, 1456, 128 L.Ed.2d 119 (1994). The absence of section 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the Securities Acts. *Id.* Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming all of the requirements for primary liability under Rule 10b–5 are met. *Id.*

Defendant argues that Plaintiffs failed to plead that Peat Marwick knowingly assisted a primary fraud. In light of *Central Bank,* a private Plaintiff may not maintain an aiding and abetting liability suit under section 10(b). Therefore, KPMG Peat Marwick's Dispositive Motion to Dismiss aiding and abetting claim is granted.

### STATE LAW CLAIMS

The Court concludes that it is appropriate to exercise its pendant jurisdiction over the related state claims in the interest of "judicial economy, convenience and fairness to litigants." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### 4. COMMON LAW FRAUD AND DECEIT

 The essential elements of common-law fraud are as follows: (1) a false statement of fact; (2) known by the Defendant to be false at the time it was made; (3) made for the purpose of inducing the Plain-

tiff to act in reliance; (4) on the correctness of the representation; and (5) resulting damage to the Plaintiff. *Perry v. Cosgrove,* 464 So.2d 664, 666 (Fla. 2d D.C.A.1985). Unlike Rule 10b–5 claims, common law claims cannot be based upon the fraud-on-the-market theory. *Kahler v. E.F. Hutton & Co.,* 558 So.2d 144 (Fla. 3d Dist.Ct.App.1990).

Defendants argue Plaintiffs have failed to plead facts showing individual reliance. Defendants acknowledge that Plaintiffs plead in the alternative, that they relied on financial statements, Checkers' SEC filings, and other public disclosures. Although the Complaint identifies no individual Plaintiff who relied upon, or even read, any of Checkers' financial statements, the Court cannot conclude that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Therefore, Checkers' and Individual Defendant's Dispositive Motion to Dismiss, and Defendant KPMG Peat Marwick's Dispositive Motion to Dismiss are denied as to the Common Law Fraud and Deceit claim.

### 5. NEGLIGENT MISREPRESENTATION

 The elements of negligent misrepresentation claim are: (1) a misrepresentation of a material fact; (2) knowledge by the representative as to the truth or falsity of the representation, or that the representation was made under circumstances in which he ought to have known of its falsity; (3) intent by the representator that the representation induces another to act on it; and (4) injury to the Plaintiff as a result of acting in justifiable reliance on the misrepresentation. *C. & J. Sapp Publishing Co. v. Tandy Corp.,* 585 So.2d 290, 292 (Fla. 2d Dist.Ct.App.1991). Unlike Rule 10b–5 claims, common law claims cannot be based upon the fraud-on-the-market theory. *Kahler v. E.F. Hutton & Co.,* 558 So.2d 144 (Fla. 3d Dist.Ct.App.1990).

Defendants argue Plaintiffs have failed to plead facts showing individual reliance. Defendants acknowledge that Plaintiffs plead in the alternative, that they relied on financial statements, Checkers' SEC filings, and other public disclosures. Although the Complaint identifies no individual Plaintiff who relied upon, or even read, any of Checkers' financial statements, the Court cannot conclude that

Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. The Court denies Checkers' and the Individual Defendant's Dispositive Motion to Dismiss as to the Negligent Misrepresentation claim.

The Florida Supreme Court adopted the standards set forth in Section 552 of the Restatement (Second) of Torts for determining when a non-client may bring an action for negligent misrepresentation against an auditor. *First Fla. Bank, N.A. v. Max Mitchell & Co.,* 558 So.2d 9, 14 (Fla. 1990). Before an accountant may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance. *Id.* at 11.

Because of the heavy reliance upon audited financial statements in the contemporary financial world, permitting recovery only from those in privity or near privity is unduly restrictive. *Max Mitchell,* 558 So.2d at 15. However, a claim may be brought only by those persons or classes of persons whom the accountant knows will rely on his opinion rather than those he should have known would do so. *Id.*

Defendant KPMG Peat Marwick argues that Plaintiffs, as open market purchasers of a security, lack standing to sue under Florida law. However, the Court cannot conclude that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Therefore, KPMG Peat Marwick's Dispositive Motion to Dismiss is denied.

6. SECTIONS 517.211 AND 517.301 OF THE FLORIDA SECURITIES INVESTOR PROTECTION ACT ("FSIPA")

The Florida statutory requirements are identical to Rule 10b–5, except that scienter requirement under Florida law is satisfied by a showing of mere negligence, whereas the minimum showing under Rule 10b–5 is reckless disregard. *Gochnauer v. A.G. Edwards & Sons, Inc.,* 810 F.2d 1042, 1046 (11th Cir.1987). The statute requires that a plaintiff be in privity with the seller before liability pursuant to FSIPA will be imposed. *E.F. Hutton & Co. v. Rousseff,* 537 So.2d 978, 981 (Fla.1989).

Checkers and the Individual Defendants contend because Plaintiffs have not alleged that they were immediate purchasers from Checkers or any of the Individual Defendants, the FSIPA count fails to state a claim upon which relief can be granted. Defendants argue the Act provides a cause of action for a purchaser only against his immediate seller or any officer, director, partner, or agent of such seller who personally participated or aided in making the sale. However, it can be inferred Plaintiff alleges Defendants solicited the subject sale of securities for their financial gain and so the Court cannot conclude that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Thus, Checkers and the Individual Defendants' Dispositive Motion to dismiss as to FSIPA claim is denied.

To maintain an action under the FSIPA, "buyer/seller" privity is required. *Beltram v. Shackleford, Farrior, Stallings & Evans,* 725 F.Supp. 499, 500 (M.D.Fla.1989). Auditors may not be held liable under Section 12 where their conduct consisted only of the performance of their professional services and they had no financial interest in the sale of securities. *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 535–537 (9th Cir.1989).

Defendant KPMG Peat Marwick argues because Plaintiffs did not allege Peat Marwick participated in a sale of securities, plaintiff's claim under FSIPA must be dismissed. Defendants further contend Plaintiffs fail to allege that they purchased their securities directly from Peat Marwick. Therefore, Defendant KPMG Peat Marwick's Dispositive

Motion to Dismiss is granted with leave to amend complaint with facts sufficiently alleging "buyer/seller privity."

Accordingly, it is ORDERED that:

(1) Checkers and Individual Defendant's Dispositive Motion to Dismiss (Dkt. # 13) alleged violations of Sections 10(b) of the Exchange Act and Rule 10b–5 is **denied.** Defendant KPMG Peat Marwick's Dispositive Motion to Dismiss (Dkt. # 16) alleged violations of Sections 10(b) of the Exchange Act and Rule 10b–5 is **denied.**

(2) Checkers and Individual Defendant's Dispositive Motion to Dismiss (Dkt. # 13) alleged violations of Section 20(a) of the Exchange Act is **denied.**

(3) Defendant KPMG Peat Marwick's Dispositive Motion to Dismiss (Dkt. # 16) alleged wrongdoing of Peat Marwick for Aiding and Abetting is **granted.**

(4) Checkers and Individual Defendant's Dispositive Motion to Dismiss (Dkt. # 13) Common Law for Fraud and Deceit claim is **denied.** Defendant KPMG Peat Marwick's Dispositive Motion (Dkt. # 16) to Dismiss Common Law for Fraud and Deceit claim is **denied.**

(5) Checkers and Individual Defendant's Dispositive Motion to Dismiss (Dkt. # 13) Negligent Misrepresentation claim is **denied.** Defendant KPMG Peat Marwick's Dispositive Motion to Dismiss (Dkt. # 16) Negligent Misrepresentation claim **denied.**

(6) Checkers and Individual Defendant's Dispositive Motion to Dismiss (Dkt. # 13) alleged violations under Sections 517.211 and 517.301 of the FSIPA is **denied.** Defendant KPMG Peat Marwick's Dispositive Motion to Dismiss (Dkt. # 16) alleged violations of Sections 517.211 and 517.301 of the FSIPA is **granted.**

DONE and ORDERED.